PER CURIAM.
The Circuit Court of Covington County denied the claims of ex-wife Susie Copeland against the estate of Lewis Copeland for back child support and denied her claim for subrogation rights against the estate for life insurance proceeds. The ex-wife appeals. We affirm in part; reverse in part; and remand.
Lewis Copeland died on April 14, 1985. He was married to Joyce Copeland at the time of his death. Joyce petitioned the probate court for letters of administration of the estate on May 14, 1985, arid she was appointed administratrix on that day. Various claims were then filed against the estate by creditors. Two of these claims were filed by Susie Copeland, who was divorced from Lewis Copeland in 1979. The first claim was based upon back child support in the amount of $2,172.27. The second claim involved an equitable claim for subrogation against the estate.
The facts surrounding Susie Copeland’s claims are as follows: After the divorce, Lewis Copeland maintained life insurance policies that named Susie Copeland as the beneficiary. Subsequently, in October 1980, the original divorce decree was modified to state, in part:
“(5) To secure the child support payments ordered herein, the defendant, Lewis W. Copeland, is hereby restrained and enjoined from changing the beneficiary on any life insurance policies now in force on his life and is directed to keep his present policies in force and effect, *1232 this injunction to continue until the support obligations due under this decree are fully discharged.”
Prior to the modification, Lewis Copeland had assigned these life insurance policies as collateral for loans he had made with Commercial Bank.[1] Additionally, Lewis Copeland had borrowed funds directly from the insurance companies against the life insurance policies. After the trial court modified the divorce decree, Lewis Copeland maintained these life insurance policies with Susie Copeland as the named beneficiary. He also renewed his loans with Commercial Bank, with the same life insurance assignments remaining in effect as loan collateral.
Upon Lewis Copeland’s death, Commercial Bank took the life insurance proceeds from the assigned policies to satisfy the outstanding loan indebtedness. Susie Copeland, the named beneficiary of the policies, received the excess (approximately $15,000) of the policies’ proceeds remaining after the bank loans were paid, less the sums Lewis Copeland had borrowed directly from the insurance companies. Susie Copeland then filed her claims against the estate.
Joyce Copeland disputed the claims submitted by Susie Copeland, and the probate court denied them. Susie Copeland appealed the probate court’s settlement order to the circuit court. After a hearing de novo, the circuit court denied the claims submitted by Susie Copeland. This appeal followed.

I. The Subrogation Claim for Insurance Proceeds

Susie Copeland contends here that, as the named beneficiary of the life insurance policies, she should now be allowed to collect from the estate an amount equal to the two separate sums that were paid from the insurance proceeds: first, that paid to Commercial Bank; and second, that paid to the insurance companies. She stresses the fact that each of the debts owed to the assignees of the policies was solely the obligation of the insured; and, as authority for her contention, she relies on the case of Rountree v. Frazee, 282 Ala. 142, 209 So.2d 424 (1968).
In Rountree, the named beneficiary of the life insurance policy was the former spouse of the insured. The insured, prior to his death, had assigned the policy as collateral for a loan. Upon the insured’s death, the entire proceeds of the policy were paid to the assignee. The named beneficiary brought suit against the assign-ee and the insured’s estate. The trial court held that the named beneficiary was to be subrogated to the rights of the assignee and that the estate of the deceased insured was indebted to the former spouse, as named beneficiary, for the sum paid from the policy proceeds to the assignee. In affirming, the Rountree Court quoted from the appellee’s summary of a case decided by the Supreme Court of Pennsylvania:
“ ‘This Court holds that ... the decedent’s intent must control as to whether insurance beneficiaries get the net or gross proceeds under a policy which is assigned as collateral for a loan.’ ”
282 Ala. at 148, 209 So.2d at 428.
It is clear that the Court in Rountree, applying general contract law and citing several cases from other jurisdictions to like effect, determined that the insured’s intent, as gleaned from the terms of the policy designating the former wife as the beneficiary, supported the named beneficiary’s claim as subrogee to the rights of the assignee. Because we are unable to distinguish, in any material aspects, the facts in Rountree from the facts of the instant case, we hold that the lower court erred in reaching a result opposite that reached in Rountree.
The estate’s personal representative, as appellee, urges us to distinguish Rountree *1233 on the basis that the insured in this case maintained the policy with Susie Copeland as the named beneficiary only to comply with the trial court’s order. From the evidence presented, she says, the trial court could have concluded that it was the insured’s intent that the assignee bank should receive from the life insurance policies those proceeds necessary to pay off his indebtedness to it; and, therefore, she says, only the balance of the proceeds after such payment would inure to the named beneficiary of the policies.
Inherent in this argument is the proposition that, except for the modified divorce decree, the insured could have changed the beneficiary; thus, the “intent of the insured” element is subject to an interpretation different from that found in Rountree, where the insured voluntarily left the beneficiary unchanged.
While we are impressed with the novelty of this argument, we are unpersuaded by it. With respect to the insured’s intent, we know only that he intended to (and, in fact, did) abide by the court order restraining him from changing the beneficiary. To be sure, the court’s mandatory injunction was superimposed upon and subverted the insured’s intent; but this does not change the legal effect of the contract of insurance naming Susie Copeland as beneficiary of its death benefits. The options, or certain ones of them, suggested in Rountree, to restrict the rights of the beneficiary consistent with the insured’s obligation of support, though available to the insured, were not exercised by him.
Therefore, giving effect to the policies of insurance according to their terms, we hold that Susie Copeland was entitled to a judgment against the estate to the extent of any insurance proceeds paid to the bank and to the extent of the proceeds credited against the loans from the insurance companies directly to the insured.

II. The Past-Due Child Support Claim

A more difficult question is presented with respect to Susie Copeland’s additional claim for past-due child support. She urges us to resolve this issue in her favor simply by recognizing that past-due child support payments constitute a money judgment, even without further proceedings. Ex parte Morgan, 440 So.2d 1069 (Ala.1983). In the instant context, counters the appellee, where the former spouse is awarded proceeds from insurance maintained “To secure the child support payments,” and the proceeds are in an amount in excess of the past-due support, the answer is not that simple. Additionally, the appellee contends that the issue is not resolved automatically by our resolution of the subrogation issue on the basis of general contract law and is not resolved by answering the question whether all the child support owed by the insured was paid; rather, she says, we should look to the nature and purpose of the insurance here provided. Thus, the appellee concludes that, under either the trial court’s award of $15,000, or, under our determination to award the total proceeds to the former spouse, the award of these proceeds should extinguish the debt represented by the past-due payments.
The argument for reversal of the trial court’s denial of this separate claim for past-due support is an appealing one: The father and former husband was obligated to pay child support to his former wife; and, at the time of his death, he was $2,172.27 in arrears. This obligation (now a final judgment), says the former spouse, stands apart from, and is in addition to, the life insurance maintained “To secure the child support payments.”
After careful consideration, however, we hold that the debt for past-due child support payments is extinguished by the payment of the life insurance proceeds to the former wife, as the named beneficiary. We recognize that our holding is subject to the criticism that the former wife’s relief, under these circumstances, is subject to the whims (or misfortunes) of the former husband in not keeping his child support payments current. We recognize further that our holding lends itself to the result that, so long as the past-due payments, at the time of the insured’s death, do not exceed the sum total of the insurance proceeds, the former wife is limited in her recovery *1234 to her rights as beneficiary under the policy-
Notwithstanding these considerations, we are constrained to so hold because of the nature and purpose of the insurance here provided. It is one thing to give the insurance policies full effect according to their terms and not engage in an accounting procedure to determine how much of the proceeds are required to match the precise obligation of the insured for past or future payments of child support, even where the maintenance of the policies is required by court order. It is an entirely different thing, however, to allow the former spouse full recovery under the policies and, at the same time, to grant her claim for all past-due child support payments. Furthermore, we note that, during the lifetime of the insured, the former spouse is not without adequate remedy to enforce collection of past-due child support payments.
We conclude our discussion by cautioning the reader that what we have said here is not to be understood as any indication as to how this Court would treat past-due child support payments where the insured voluntarily maintained a life insurance policy on his life, naming as beneficiary his former spouse or his child by a former spouse.
AFFIRMED AS TO PART II; REVERSED AS TO PART I; AND REMANDED.
ADAMS, J., concurs.
TORBERT, C.J., and MADDOX, ALMON, and STEAGALL, JJ., concur as to Part II, and dissent as to Part I.
JONES, SHORES, BEATTY, and HOUSTON, JJ., concur as to Part I, and dissent as to Part II.

. We note that the appellee’s brief recites the fact that Susie Copeland had signed one assignment as "owner." Because no point regarding this fact was made in the trial court’s order and the fact was not further alluded to in the argument section of the appellee's brief, our treatment of the issues presented is not to be understood as addressing the significance, if any, of Susie Copeland’s consent to the assignment of one of the policies.